UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID MOSS, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE <br> Commissioner of Social Security <br> Administration, <br><br> Defendant. | Case No. 09-1196 |

# O R D E R

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion for Affirmance. For the reasons set forth below, Plaintiff's Motion for Summary Reversal [#10] is DENIED, and the Commissioner's Motion for Summary Affirmance [#13] is GRANTED.

## BACKGROUND

David Moss ("Moss") was 49 years old at his 2008 hearing (R2134). He is 6'4" and weighs 190 lbs. Id. He does not have any children and has been divorced since 1993. (R2063) Although at the time of his hearing Moss had a private residence, he had previously resided at different shelters. (R981, 2118)  Moss graduated from high school and attended three years of college. (R2065)  His employment history is diverse.  Moss has worked as a radio announcer, house renovator, DJ, and at various other occupations (R2066-67, 2069-70, 2072).  Moss last worked in 2004 for Custom Renovators where he helped remodel houses and apartment complexes.  (R2067)

1

On May 23, 2005, (R424) Moss[1] filed for disability insurance benefits ("DIB"), alleging back problems, panic disorder, and depression. (R433) The Social Security Administration ("SSA") denied his application because he was "able to do light-unskilled work." Id. The SSA also denied Moss's request for reconsideration. (R435) He then filed for an Administrative Law Judge ("ALJ") hearing (R439), which ALJ Alice Jordan heard on April 24, 2007. (R2057) The ALJ denied Moss's claim, and Moss requested a review of her decision. (R21) The Appeals Council remanded the case. (R2109) Three people testified at the rehearing: Moss, who was represented by counsel; Moss's case manager, Pepper Kenney; and Paul Gustafson, a Vocational Expert ("VE"). (R2113, 2125, 2134) ALJ Jordan again denied Moss's claim. (R38). On May 01, 2009, the Appeals Council denied Moss's request for review, and the ALJ's decision became the final decision of the Commissioner. (R14)

Moss testified that back pain[2] and a pinched nerve in his neck limited his abilities. (2114-2115) According to Moss, he could only turn his neck a short distance, and pain made it difficult for him to sit, sleep, or lay on his stomach and sides. Id. Moss also testified that problems with his left leg required him to use a cane. Id. Moss claimed that the weakened leg would sometimes go numb down to the foot. (R2114) Moss said that he could sit in a position for only fifteen minutes before his back and shoulders bother him. (R2119) He admitted that he could watch television and read but claimed he could not use a computer without a great deal of pain. (R2121)

In addition to his physical ailments, Moss also faced various mental limitations. He testified that he was depressed and that being around people made him anxious. (R2115-16) Moss claimed his depression and anxiety caused him to isolate himself. Id. Moss testified that

---

[1] Moss has applied for DIB on two other occasions (August 7, 2000 and September 13, 2001) and was denied both claims as well as his requests for reconsideration. (R45, 49, 55, 59) Moss also requested an Administrative Law Judge hearing in which Judge John M. Wood ruled that Moss "is not disabled within the meaning of the Social Security Act." (R412)

[2] Moss previously underwent an L5-S1 decompression and fusion in 2005 to help his back. (R1018-1019)

he feared interacting with people (R2121) and that he had attempted suicide. (R2118) He had, however, socialized with people other than his case manager and physicians. (R2123) Moss sought help for his anxiety and depression through inpatient, (R917, 929, 978, 1000) and outpatient treatment. (R661-85) Various treating physicians further noted that Moss was manipulative and motivated by his desire for drugs and a bed. (R918, 1114, 1250-51)

In Moss's Residual Functional Capacity Assessment, the consulting physician, Burris Stanley, diagnosed Moss with Spondylolisthesis and an L5-S1 Decompression and Fusion. (R686) The consulting physician concluded that Moss could, despite his physical ailments, "perform a wide range of light work." (R693) The consulting physician of Moss's Psychiatric Review Technique, Brister Phyllis, wrote that Moss had a panic disorder, Dysthymia, and displayed signs of cocaine abuse and drug seeking behavior. (R706) The consulting physician also concluded that Moss had mild restrictions as to daily living, moderate difficulties with social functioning, moderate difficulties maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (R704) Consequently, the consulting physician concluded that the evidence did not establish the presence of "C" criterion. (R705) Moss's Mental Residual Functional Capacity Assessment confirmed that Moss did not suffer any marked limitations. (R708-09) The consulting physician concluded that Moss "remains cognitively intact and able to understand, recall and execute at least simple operations of a routine, repetitive nature" and that Moss could "tolerate occasional social contacts and adapt to routine." (R710)

In determining whether Moss had a severe impairment under step 2, the ALJ examined various aspects of Moss's medical history. (R28-32) While examining Moss's medical treatment, the ALJ noted that Moss had been hospitalized in May 2005 for depression and had a GAF of "55 to 60." (R29) The ALJ ultimately found that Moss's impairments were severe. (R28)

However, the ALJ also found that Moss's limitations did not satisfy step 3 criteria. Step 3 requires the ALJ to determine whether the claimant's disorders meet or exceed disorders listed

3

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Moss's back impairment did not "satisfy" the spinal disorder Listing (1.04) because "there is no evidence of nerve root compression, radiculopathy or cauda equine syndrome, spinal arachnoiditis manifested by severe burning, or painful dysesthesia resulting in the need for changes in position or posture more than once every 2 hours, or lumbar spinal stenosis."  (R32)  The ALJ also found that Moss's mental impairments did not satisfy Listing 12.04 (affective disorders) and 12.09 (substance addiction disorders) Criteria because Moss had no marked difficulties and no episodes of decompensation.  (R32-33)  Since, among other activities, Moss was capable of doing laundry and dishes, picking up after himself, and mowing his lawn, the ALJ found him to be only mildly restricted in activities of daily living.  (R33)  Because Moss had friends and family and interacted pleasantly with examiners, the ALJ found that he only had moderate social difficulties. Id.  The ALJ ruled that because treatment notes indicated Moss did not suffer from a "loss of cognitive function," he did not have a marked limitation "[w]ith regard to concentration, persistence or pace."  Id.  Moss's Mental Residual Functional Capacity Assessment supports the ALJ's conclusion.  (R708)  Finally, the ALJ also found that Moss did not suffer episodes of decompensation and that "the evidence failed to establish the presence of 'paragraph C' criteria."  (R33)  Consequently, the ALJ ruled that Moss did not have an impairment that "meets or medically equals" the Listings.  (R32)

The ALJ did not give controlling weight to all of the evidence presented.  Moss's case manager, in a written assessment undersigned by Dr. Bitar, reported on June 7, 2006, that Moss had "marked limitations in following work rules, using judgment, functioning independently and maintaining attention and concentration . . . understanding, remembering and carrying out simple job instructions." (R31)  She also concluded that Moss had extreme limitations "relating to co-workers, dealing with the public, interacting with supervisors . . . dealing with work stresses . . . behaving in an emotionally stable manner, relating predictably in social situations and demonstrating reliability."  Id.  The ALJ did not afford the June 7, 2006, report controlling

4

weight because she found it to be inconsistent "with the record as a whole . . ." and it was "based on personal observation rather than formal testing." Id.  On page 11 of her opinion, the ALJ separately addressed Dr. Bitar's signature on the report.  (R36)  The ALJ did not give controlling weight to Dr. Bitar's opinion.  Id.  As with the caseworker, the ALJ found that Dr. Bitar's assessment was ". . .internally inconsistent with the record. . ." and that there was "no significant reason" to believe that Moss's manipulative behavior, noted by several other doctors, would be any different "before his case worker or psychiatrist." Id.

The ALJ also did not afford controlling weight to statements Moss made.  The ALJ found that although Moss's "impairments could reasonably be expected to produce the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment for the reasons explained."  (R34) (emphasis added).

At the trial, the VE presented a hypothetical to determine how many jobs Moss was qualified to perform.  The VE testified that his "data is gathered statistically through the use of census codes" that are "part of the ALNAT [sic] system."  (R2138)  Moss did not object to the VE's use of the ONET system.  The ALJ found that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles" ("DOT") pursuant to "SSR 00-4p" and ruled that Moss was "not disabled."  (R38)  The ALJ's decision on August 29, 2008, is the final decision of the commissioner Id.  This appeal followed.  The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other types of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the cases *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by

substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In his appeal, Moss raises several claims: (1) the ALJ improperly played doctor; (2) the ALJ needed to do a point-by-point analysis of the Listings; and (3) the Commisioner did not meet its burden at step 5 because the VE's use of the ONET system prevents Moss from corroborating the hypothetical.  The Court disagrees and finds that the ALJ did not play doctor, did not need to do a point by point analysis, and that the VE's use of ONET did not undermine the Commissioner's proof. (R38)

Moss first argues that the ALJ would have found a disability if she had examined "the entire mental health record." Brief of Moss at 35, Moss v. Astrue, No. 09-1146 (C.D. Ill. Nov. 30, 2009).  Moss claims the ALJ's examination of his May 2005 hospitalization for depression is underinclusive and that if the ALJ had properly considered his ongoing medical treatment, she would have found paragraph A and B criteria met and Moss disabled.  Id.  The paragraph Moss cites is part of the ALJ's step 2 analysis. (R29)  The ALJ used this evidence to conclude that Moss's limitations are severe under step 2, not to determine whether Moss satisfied step 3. (R29, 32)  Additionally, within step 2, the ALJ did a comprehensive examination of Moss's ongoing mental health treatments.[3]  Thus, the ALJ's step 2 analysis gave proper weight to the

---

[3] March 2005 admission to psychiatric unit at Methodist (R28); April 5, 2005 admission to psychiatric unit Id.; May 2, 2005 consultation for panic attacks (R29); May 5, 2005 report of anxiety and depression Id.; May 2005 hospitalization for depression Id.; October 2005 declaration of depression to Dr. Pinto (R30); February 2006 admission to psychiatric unit Id.; March 2006 annual psychiatric evaluation Id.; March 2006 admission to

record. The broader assertion that if the ALJ had examined the entire treatment record, her decision would have been different is perfunctory and, therefore, waived. U.S. v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

Moss also contends that the ALJ did "not give proper weight to the claimant's treating physicians." (Pet'r's Br. 35). Moss asserts that the ALJ played doctor by refusing to give controlling weight to his case manager's June 7, 2006, report. He alleges that since Dr. Bitar also signed the report, it "should have controlling weight as it is a statement of functional impairments made by the treating physician." Id. The paragraph Moss refers to addresses only the case manager's contribution to that report. The ALJ separately discusses Dr. Bitar's signature on page 11 of her opinion. (R36) Consequently, the case manager's report need not be given the deference due to a treating physician's diagnosis but can be weighed like any other evidence.

Since the ALJ "is in the best position to determine a witness's truthfulness," the court will not overturn the ALJ's "credibility determination unless it is 'patently wrong." Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (citing Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001)). The Court will uphold the ALJ's assessment of witness credibility so long as there is "some support" in the record for the finding. Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008) (citing Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007)). Here, like in Berger, the witness's conclusion differed from the consulting physician's conclusion. Berger, 516 F.3d at 446; (R704) (Psychiatric Review Technique limitations). As early as 2002, treating physicians noted that Moss exhibited "drug-seeking" behavior, (R366) a trend that continued throughout Moss's various treatments. (R1114, 1115, 1331, 1755) His physicians also noted behavior that

---

psychiatric unit (R31); October 2006 admission to psychiatric unit Id.; December 2006 appointment with his psychiatrist, Dr. Bitar (R32), January 2007 visit to the emergency room for depression (R32).

contradicted Moss's claimed limitations and suggested that Moss had motivations beyond obtaining medical help. (R1114)  For example, Dr. Tracy, who treated Moss for panic attacks in 2005, wrote that Moss was able to keep "good eye contact," and that "[h]is speech is clear, coherent and goal directed." Id.  Dr. Attaluri, who treated Moss when he was admitted to Methodist Medical Center for major depression in 2005, reported similar findings: that Moss was not "actively psychotic;" there was "no evidence of hopeless, helpless feeling;" and that Moss was, "[a]lert, oriented . . . [and] cognitively pretty much intact. (R98)  Therefore, since there is at least some support in the record for the ALJ's determination, the Court must uphold her ruling.

Even if the case manager's report was given the deference due to a treating physician's opinion, the ALJ need not have found it credible because the report states that its conclusions are based on observation and were "not the result of formal testing." (R676)  An ALJ need only give controlling weight to an opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006) (Citing 20 C.F.R. §§ 404.1527(d)(2)). See Burton v. Barnhart, 203 Fed. Appx. 737, 741-42 (7th Cir. 2007) (holding that the ALJ did not need to find the opinion of one of Burton's physicians controlling because that opinion was based on subjective claims rather than objective tests). Since the case manager's report is based on observation instead of medically acceptable diagnostic techniques, the ALJ did not err in making her credibility determination.

All other claims that the ALJ played doctor by not giving controlling weight to Moss's treating physicians are perfunctory.  Moss provides no specific examples or court cases to support his argument.  Consequently, these additional arguments are waived as perfunctory. Berkowitz, 927 F.2d at 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

Moss next argues that the ALJ erred in holding that Moss had not experienced episodes of decompensation because the ALJ's opinion did not take into account Moss's hospitalizations

between 2005 and 2008. However, the ALJ addressed Moss's hospital visits later in the opinion. As referenced before, the ALJ did not find them credible because treating physicians repeatedly noted that Moss's actions did not reflect his alleged symptoms and that certain physicians suspected Moss of "manipulating to get himself into the hospital so he could get a bed and other things." (R1114) The ALJ has authority to find that hospital visits tainted by drug-seeking behavior are not credible. Rasmussen v. Astrue, 245 F.App. 542, 546-47 (7th Cir. 2007). Additionally, none of the hospital visits lasted for more than two weeks, as required by code, and Moss failed to show that the episodes lasted beyond the discredited hospital visits. 20 C.F.R. Part 404, Subpart P, Appendix 1. And although the consulting physician on Moss's Psychiatric Review Technique noted that Moss suffered one or two episodes of decompensation, one or two episodes are insufficient to satisfy the functional criterion. (R704) Consequently, the ALJ was within her authority in finding that Moss did not suffer episodes of decompensation because Moss's drug-seeking behavior and the insufficient length of those visits provided "some support" for her determination.

Moss also summarily argues that the ALJ needed to do a point by point analysis of the Listings but provides no citations to the record or supporting cases. This argument is waived as perfunctory. Berkowitz, 927 F.2d at 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). Moreover, the ALJ sufficiently analyzed step 3. (R32) The ALJ found that Moss did not meet the criteria for a spinal disorder because he did not have evidence of the conditions listed under 1.04. (R32) When examining whether Moss met the criteria for an affective disorder or a substance addiction disorder, the ALJ examined the Listings' four steps. (R34-35). She found that: (1) Moss had a mild daily living restriction because he could still pick up after himself and do certain housework; (2) Moss had only moderate difficulties with social functioning because he was capable of leaving his home and interacted pleasantly with examiners; (3) Moss had only mild difficulties "with regard to concentration, persistence or pace"

10

because Moss could read, watch television, and treating physicians had noted no "loss of cognitive function" since his college years; and (4) there were no episodes of decompensation. (R35)   Thus, the ALJ ruled that Moss did not satisfy any of the criteria, let alone two of them. Consequently, the ALJ sufficiently analyzed the Listings before she determined that Moss did not meet them, and the Court must uphold her ruling.

Moss next contends that the ALJ erred in not finding Moss's impairments to be credible. Moss, however, misquotes the ALJ's decision.  The ALJ actually ruled that "the <u>claimant's statements</u> concerning the intensity, persistence and limiting effects of these symptoms are not credible <u>to the extent they are inconsistent</u> with the residual functional capacity assessment for the reasons explained below." (R34) (emphasis added).  The ALJ does not question that the Moss is depressed and has back pain, or that these conditions are capable of causing someone to suffer Moss's alleged symptoms. <u>Id.</u>  But the ALJ simply chose to give controlling weight to medical evidence that contradicted Moss's statements. (R34-35)  Thus, the ALJ did not question whether Moss's impairments were credible, but rather whether Moss's statements that were contradicted by other evidence should be afforded controlling weight.  Consequently, the ALJ did not err because she discredited certain statements Moss made, not his impairments.

Moss's final contention is that the Commissioner failed to meet his burden of proof because the VE's use of ONET's census codes precludes Moss from determining the hypothetical's accuracy.  Moss invokes the <u>McKinnie</u> standard in support of this argument; the <u>McKinnie</u> standard requires that the VE's data be available "on demand." <u>Britton v. Astrue</u>, 521 F.3d 799, 804 (7th Cir. 2008).  This is not a case, like <u>McKinnie</u>, where the VE was unable to provide the basis for his hypothetical. <u>Mckinnie v. Barnhart</u>, 368 F.3d 907, 909 (7th Cir. 2004). There is no evidence that the VE refused to make this data available to Moss.  Additionally, the VE is not required to limit his hypothetical to DOT data; the VE can also use outside data, including ONET. <u>See</u> <u>Lee v. Barnhart</u>, 63 Fed. Appx. 291, 293 (9th Cir. 2003) (holding that the

11

VE need only explain the use of an external source if it contradicts DOT).  Therefore, the ALJ did not err in holding that the Commissioner met its burden of proof.

Additionally, Moss failed to object to the ONET system during the hearing and, consequently, cannot raise this argument on appeal.  Liskowitz v. Astrue, 559 F.3d 736, 744 (7th Cir. 2009).  In Liskowitz, the claimant argued that the VE could not use "the Occupational Employment Quarterly" as a source for its hypothetical "because [the periodical] was published by a private company."  Id.  The court ruled that the claimant had "forfeited this argument by failing to object to the VE's testimony during the hearing."  Id.  Moss's attorney questioned the VE about his use of ONET but did not object to its use.  (R2138)  Therefore, because Moss failed to object to the ONET system at the hearing, Moss cannot object to it now.  (R2136-2140)  Accordingly, the Court must uphold the ALJ's determination.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Reversal [#10] is DENIED, and the Commissioner's Motion for Affirmance [#13] is GRANTED.  This matter is now TERMINATED.

ENTERED this 22nd day of June, 2010.


 s/ Michael M. Mihm
Michael M. Mihm
United States District Judge